PEOPLE v REED

Docket No. 296686. Submitted May 12, 2011, at Lansing. Decided August
     30, 2011, at 9:05 a.m.

Brian B. Reed was charged in the Montmorency Circuit Court with
     manufacturing less than 5 kilograms or less than 20 plants of
     marijuana, MCL 333.7401(d)(*iii*). Reed unsuccessfully approached
     two separate physicians at his regular health clinic about registering
     to use marijuana to reduce his chronic back pain as allowed by the
     Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*
     However, marijuana was discovered growing at Reed's residence on
     August 25, 2009, by the Huron Undercover Narcotics Team, after
     which he obtained a physician's statement certifying his marijuana
     use for a medical purpose on September 16, 2009, and his registry
     identification card from the Department of Community Health on
     October 6, 2009. Reed was arrested on October 16, 2009. He moved
     for dismissal of the charge, asserting the affirmative defense provided
     by § 8(a) of the MMMA, MCL 333.26428(a), and arguing that under
     § 4(a) of the act, MCL 333.26424(a), he was immune from prosecu-
     tion. After a hearing, the court, Michael G. Mack, J., denied the
     motion. Reed appealed by leave granted.

          The Court of Appeals *held*:

          1. A person facing prosecution for violating Michigan's controlled
     substances laws may assert an affirmative defense under MCL
     333.26428(a) if a physician has stated that, in the physician's profes-
     sional opinion, the patient is likely to receive therapeutic or palliative
     benefit from the medical use of marijuana to treat or alleviate the
     patient's serious or debilitating medical condition or symptoms of the
     patient's serious or debilitating medical condition. The physician's
     statement must have been made before the person's arrest and before
     the purportedly illegal conduct. Reed was barred from asserting the
     § 8(a) affirmative defense at trial because it was undisputed that he
     did not obtain the required physician's statement until after the
     police discovered his marijuana.

          2. MCL 333.26424(a) provides that certain persons are im-
     mune from prosecution for violating Michigan's controlled sub-
     stances laws if using marijuana for medical purposes. The person
     must have been issued and possess a registry identification card

before the purportedly illegal conduct is committed in order for the person to be immune from arrest, prosecution, or penalty under § 4(a). Reed did not have a registry identification card at the time the alleged crime occurred and could therefore not rely on MCL 333.26424 to claim immunity from prosecution.

Affirmed and remanded for further proceedings.

1. CONTROLLED SUBSTANCES — MARIJUANA — MEDICAL MARIJUANA — CRIMINAL DEFENSES — AFFIRMATIVE DEFENSE.

A person facing prosecution for violating Michigan's controlled substances laws may assert an affirmative defense under MCL 333.26428(a) of the Michigan Medical Marihuana Act if a physician has stated that, in the physician's professional opinion, the patient is likely to receive therapeutic or palliative benefit from the medical use of marijuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; to successfully assert this affirmative defense, the physician's statement must have been made before the person's arrest and before the illegal conduct.

2. CONTROLLED SUBSTANCES — MARIJUANA — MEDICAL MARIJUANA — CRIMINAL DEFENSES — IMMUNITY FROM PROSECUTION.

A person facing prosecution for violating Michigan's controlled substances laws for using marijuana for medical purposes may assert immunity from prosecution under MCL 333.26424 of the Michigan Medical Marihuana Act, but the person must have been issued and possess a registry identification card before the illegal conduct is committed to be immune from arrest, prosecution, or penalty.

*Bill Schuette,* Attorney General, *John J. Bursch,* Solicitor General, *Terrie J. Case,* Prosecuting Attorney, and *Melissa M. Goodrich,* Assistant Prosecuting Attorney, for the people.

*Bolser and Kundinger, PLC* (by *Benjamin T. Bolser*), for defendant.

Before: OWENS, P.J., and O'CONNELL and METER, JJ.

METER, J. Defendant appeals by leave granted the denial of his motion to dismiss a charge of manufactur-

ing less than 5 kilograms or less than 20 plants of marijuana,[1] MCL 333.7401(2)(d)(*iii*). We affirm.

This case requires us, to consider in part, the applicability of the affirmative-defense portion of the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*. See MCL 333.26428(a). Defendant's marijuana plants were discovered by the police before he received physician authorization to possess them, but he was not arrested until after he had obtained the physician authorization, as well as a registry identification card from the Michigan Department of Community Health (MDCH). See MCL 333.26424. We held in *People v Kolanek*, 291 Mich App 227, 235-236; 804 NW2d 870 (2011), that a physician's statement must be obtained before the defendant's arrest in order to establish the affirmative defense set forth in § 8 of the MMMA, MCL 333.26428. We now extend that ruling and hold that, the physician's statement must also occur before the commission of the purported offense in order to establish the affirmative defense. We further hold that defendant has no immunity from prosecution under MCL 333.26424 because defendant did not possess a registry identification card at the time of the purported offense.

The facts in this case are undisputed. Defendant suffers from chronic back pain due to a degenerative disk disease for which he underwent surgery more than a decade ago. After the enactment of the MMMA, defendant began to inquire about the possibility of becoming registered to use marijuana to help relieve his pain. He began at Thunder Bay Community Health Service, the clinic that he generally attended for treatment of his condition. However, two separate doctors

---

[1] Although the statutory provisions at issue refer to "marihuana," this Court uses the more common spelling "marijuana" in its opinions except in quotations.

there told him that they would not be issuing certifications for medical use of marijuana because they received federal funding. Defendant then searched for another place to receive certification but had not formally consulted with another doctor before his marijuana was discovered.

On August 25, 2009, the Huron Undercover Narcotics Team (HUNT), during an aerial surveillance, spotted six marijuana plants growing at defendant's residence. At that time, defendant had not received a physician's statement certifying his marijuana use for a medical purpose. See MCL 333.26428(a)(1). On September 16, 2009, defendant received a doctor's certification to use marijuana medically, and he received his registry certification card from MDCH on October 6, 2009. Ten days later, on October 16, he was arrested and charged with the manufacture of marijuana.

Defendant filed a motion to dismiss the charge under MCL 333.26428(b), arguing that the trial court was obligated to dismiss the case because defendant satisfied all three elements of the affirmative defense. Additionally, defendant argued that he should have been immune from arrest under MCL 333.26424(a). The trial court denied the motion and we granted defendant's application for leave to appeal.

This case involves statutory interpretation, which we review de novo. *People v Redden*, 290 Mich App 65, 76; 799 NW2d 184 (2010). "Generally, the primary objective in construing a statute is to ascertain and give effect to the Legislature's intent." *Id.* The MMMA was enacted by an initiative adopted by the voters. "The words of an initiative law are given their ordinary and customary meaning as would have been understood by the voters." *Welch Foods, Inc v Attorney General*, 213 Mich App 459, 461; 540 NW2d 693 (1995). Moreover, "[t]his Court

must avoid a construction that would render any part of a statute surplusage or nugatory, and '[w]e must consider both the plain meaning of the critical words or phrases as well as their placement and purpose in the statutory scheme.' " *Redden*, 290 Mich App at 76-77, quoting *People v Williams*, 268 Mich App 416, 425; 707 NW2d 624 (2005).

Defendant first argues that he may use MCL 333.26428(a) as an affirmative defense to the charge of manufacturing marijuana. MCL 333.26428(a) states:

Except as provided in [MCL 333.26427], a patient and a patient's primary caregiver, if any, may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana, and this defense shall be presumed valid where the evidence shows that:

(1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

(2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

(3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or

debilitating medical condition or symptoms of the patient's serious or debilitating medical condition.[2]

Defendant argues that under our recent decision in *Kolanek*, he could satisfy the requirement that "[a] physician *has stated* that . . . the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana," see MCL 333.26428(a)(1), by obtaining this statement at any time before arrest. (Emphasis added.)

In *Kolanek*, 291 Mich App at 229, the defendant was arrested after a search of his vehicle revealed eight marijuana cigarettes. He filed a motion to dismiss under MCL 333.26428(b), claiming the § 8 affirmative defense because he used the marijuana to treat the pain associated with his Lyme disease. *Id.* at 231-232. The defendant's doctor had authorized the ʻ defendant's marijuana use after his arrest and testified at trial that the amount the defendant had in his possession was reasonable. *Id.* at 230. In affirming the trial court's denial of the defendant's motion to dismiss, this Court held that "the language in MCL 333.26428(a)(1), '[a] physician has stated,' requires that a physician's statement of the medical benefit of marijuana be made prior to arrest." *Id.* at 230. Defendant argues that this language validates, for purposes of the § 8 affirmative defense, his doctor's approval, which occurred on September 16, 2009, one month before his arrest. We disagree.

In *Kolanek*, the defendant was charged the day after his marijuana was seized. *Id.* at 229. It appears that the seizure and the arrest were simultaneous; indeed, the *Kolanek* Court gave no indication that it was considering a situation in which the crime and arrest were not

---

[2] Defendant's compliance with MCL 333.26428(a)(2) and (3) are not at issue here.

contemporaneous. Accordingly, we cannot place substantial emphasis on the *Kolanek* Court's use of the term "arrest" in describing its holding. Moreover, the *Kolanek* Court stated: "[I]t is reasonable to assume that the affirmative defense created in § 8 was intended to protect those who actually had a medical basis for marijuana use recognized by a physician *before the use began* and was not intended to afford defendants an *after-the-fact exemption for otherwise illegal activities.*" *Id.* at 238 (emphasis added). The Court, in making this statement, was clearly focusing on a defendant's purportedly illegal *conduct*, not on the defendant's arrest. We note that statutes should be construed so as to avoid absurd results. *McAuley v Gen Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998), abrogated in part on other grounds by *Rafferty v Markovitz*, 461 Mich 265, 273 n 6; 602 NW2d 367 (1999). It would be absurd if it were possible to assert the § 8 affirmative defense by obtaining a physician's statement after the crime had been committed but before an arrest has been made.[3] The law would provide less incentive to obtain a qualifying physician's statement if it were construed in the manner defendant suggests. This interpretation would also place too much emphasis on the police decision to arrest a suspect rather than the illegal conduct undertaken by that suspect.

The Oregon Court of Appeals, interpreting that state's affirmative defense contained in Or Rev Stat 475.319(1), agrees. That court stated: "[W]e conclude that, in order for defendant to have availed himself of the 'medical marijuana' affirmative defense in [Or Rev

---

[3] In effect, defendant's argument would have us apply the law in a "reverse ex post facto" manner, allowing one who has committed a crime to avoid punishment by taking action to obtain a physician's statement after the illegality of his actions has been discovered.

Stat] 475.319(1), his attending physician's advice regarding the use of medical marijuana had to occur *before the incident for which he was arrested." Oregon v Root*, 202 Or App 491, 497; 123 P3d 281, 284 (2005) (emphasis added). We note that *Kolanek* also relied on *Root*. See *Kolanek*, 291 Mich App at 238.

In light of these considerations, we hold that for a § 8 affirmative defense to apply, the physician's statement must occur before the purportedly illegal conduct.

Generally, a defendant is not barred from asserting a § 8 defense at trial simply because his pretrial motion to dismiss was denied. See the concurring opinion of Judge M. J. KELLY in *People v Anderson*, 293 Mich App 33, 63; 809 NW2d 176 (2011).[4] See also *Kolanek*, 291 Mich App at 241-242 ("Because the statute does not provide that the failure to bring, or to win, a pretrial motion to dismiss deprives the defendant of the statutory defense before the fact-finder, defendant's failure to provide sufficient proofs pursuant to his motion to dismiss does not bar him from asserting the § 8 defense at trial nor from submitting additional proofs in support of the defense at that time."). However, the *Anderson* Court also held that, when there is no issue of fact to present to a jury that might establish a § 8 defense, "a trial court might be warranted in barring a defendant from presenting evidence or arguing at trial that he or she is entitled to the defense stated in § 8(a)." *Anderson*, 293 Mich App at 64-65. The relevant standard is whether, "given the undisputed evidence, no reasonable jury could find that the elements of the § 8 defense had been met." *Id.* at 65.

---

[4] The majority opinion in *Anderson* stated that it adopted part II(C)(3) of Judge KELLY's concurring opinion, the portion at issue here. *Anderson*, 293 Mich App at 35.

In *Anderson,* it was undisputed that the defendant possessed more than 12 marijuana plants and that some of them were not kept in an enclosed, locked facility. *Id.* No reasonable jury could have found, given this fact and the applicable law, that the defendant was entitled to assert the § 8 defense. *Id.* Thus, the Court held that "[t]he trial court did not err when it precluded Anderson from presenting a § 8 defense at trial." *Id.* Here, it is undisputed that defendant did not obtain the required physician's statement until after his marijuana had been discovered by HUNT. No reasonable jury could find that defendant is entitled to the § 8 defense, and thus defendant is barred from asserting it at trial.

Defendant relies on § 4 of the MMMA, MCL 333.26424, to support his additional argument that he should have been immune from prosecution. The statute states, in relevant part:

> A qualifying patient who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana in accordance with this act, provided that the qualifying patient possesses an amount of marihuana that does not exceed 2.5 ounces of usable marihuana, and, if the qualifying patient has not specified that a primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility. Any incidental amount of seeds, stalks, and unusable roots shall also be allowed under state law and shall not be included in this amount. [MCL 333.26424(a).]

Defendant's argument fails because at the time of the offense he did not possess a registry identification card. The statute states that "[a] qualifying patient *who has*

*been issued and possesses a registry identification card* shall not be subject to arrest, prosecution, or penalty . . . for the medical use of marihuana in accordance with this act . . . ." MCL 333.26424(a) (emphasis added). The statute ties the *prior issuance* and possession of a registry identification card to the medical use[5] of marijuana, and much of the same reasoning that applies to the timing under § 8 applies equally to the timing regarding registry identification cards. See, e.g., *Kolanek*, 291 Mich App at 238-239; see also the prior analysis in this opinion. Defendant did not have the card at the applicable time and therefore is not immune from arrest, prosecution, or penalty.

Affirmed and remanded for further proceedings. We do not retain jurisdiction.

OWENS, P.J., and O'CONNELL, J., concurred with METER, J.

---

[5] We note that the definition of "medical use" under the MMMA includes "cultivation." MCL 333.26423(e).